# **EXHIBIT K**

**WOODBRIDGE LIQUIDATION TRUST**
Michael I. Goldberg, Liquidation Trustee
350 East Las Olas Boulevard, Suite 1600
Ft. Lauderdale, Florida  33301

<u>**VIA U.S. MAIL & WEB POSTING**</u>

September 13, 2019

Dear Beneficiaries,

As Trustee of the Woodbridge Liquidation Trust (the "Trust"), I write to update you on: (i) the status of Robert Shapiro's criminal sentencing; (ii) the status of the Trust's registration of its Class A Liquidation Trust Interests ("Class A Interests") with the U.S. Securities and Exchange Commission (the "SEC"); and (iii) updated estimates regarding beneficiary recoveries.  I also write to remind you of the Trust's website, www.woodbridgeliquidationtrust.com.  I will endeavor to continue posting periodic updates on the website, and I encourage you to check the site regularly.

*Robert Shapiro Criminal Sentencing*

In March 2019, Robert Shapiro was charged with ten criminal counts stemming from his orchestration of the Woodbridge fraud.  After initially pleading not guilty, in August 2019 Shapiro changed his plea to a guilty plea, and pleaded guilty to counts of conspiracy to commit mail fraud and wire fraud, and tax evasion.  Shapiro's sentencing hearing is scheduled to take place on October 15, 2019 at 8:30 a.m.  The hearing will take place before Judge Cecilia M. Altonaga, at 400 North Miami Avenue, Courtroom 12-2, Miami, Florida 33128.  The sentencing hearing is open to the public.

*Registration of the Class A Interests with the SEC*

Pursuant to the Woodbridge plan of liquidation (the "Plan") and the Trust's governing document (the "Trust Agreement"), the Trust interests that you hold are, with certain uncommon exceptions, not presently allowed to be transferred (*i.e.* sold to somebody else).  Because the Trust interests are generally not yet transferable, at the present time there is no trading market for the Trust interests.

However, the Plan and Trust Agreement do require that the Trust endeavor to cause the Class A Interests to be registered with the SEC under the section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").  When registration becomes effective, the transfer restriction on the Class A Interests will terminate and, at that time, the Class A Interests will become transferable to the extent otherwise permissible under applicable law.  The termination of the transfer restriction will, in most cases, mean that you will be permitted, but not required, to sell your Class A Interests to another person or otherwise change the way you hold title to your Class A Interests.  I will notify you in writing that the Class A Interests have become transferable

50153705;1

Letter to Beneficiaries
September 13, 2019
Page 2

promptly after the effective date of the registration. I also will post the notice on the Trust's website at https://woodbridgeliquidationtrust.com.

The registration process includes the following steps, among others. The Trust, with input from its subsidiary, the "Wind-Down Entity," is currently in the process of drafting a document, known as a "Registration Statement," which will be filed with the SEC. The Registration Statement is required to contain a substantial amount of very specific information about the Trust and the Class A Interests, including, among other things, the nature, history, operations and properties of the Trust and its subsidiaries, the business experience of the governing bodies and management of the Trust and the Wind-Down Entity, specified financial data and results, and audited financial statements. I anticipate that the Registration Statement will be filed with the SEC on or before October 28, 2019. The Registration Statement is expected to be publicly available for viewing and copying at https://sec.gov/edgar.shtml as soon as it has been filed. Through the Trust's website at https://woodbridgeliquidationtrust.com, I plan to make the Registration Statement available, free of charge, as soon as reasonably practicable after we electronically file it with the SEC.

After the Registration Statement is filed, I anticipate that the SEC will review the information in the Registration Statement to ensure that the disclosure contained in the Registration Statement is adequate. Based on the SEC's typical review time, we would expect to receive any comments or questions that the SEC may have within about 30 days of the filing. We will then work with the SEC to address any such comments or questions, which may require the preparation and filing of an amendment to the Registration Statement. Assuming that all SEC comments and questions are satisfactorily addressed, we expect that the Registration Statement, as it may be amended, will be declared or allowed to become effective and the Class A Interests will then become transferable to the extent otherwise permissible under applicable law. My goal is to have this process conclude by the end of this calendar year, but there are no assurances that this will happen.

Once the Class A Interests have become transferable, you should be able to effect the transfer of your Class A Interests to another person simply by completing and submitting the applicable transfer forms, which are expected to be available from our Transfer Agent, Continental Stock Transfer & Trust Company.

There is a difference between the Class A Interests being *transferable* and there actually being *an organized securities market in which prices for the Class A Interests are quoted and on which your securities broker can buy or sell Class A Interests on your behalf*. The Trust is not required to list the Class A Interests on any *national securities exchange* (such as the NYSE, the NASDAQ Stock Market, or the NASDAQ National Market), and there are no plans to do that. But the Plan and Trust Agreement *do* require the Trust to make efforts to cause the Class A Interests to be traded on an *over-the-counter market*, and we are making preparations for the Class A Interests to be traded on the Over-The-Counter Bulletin Board (OTCBB). To be traded on the OTCBB, the Class A Interests will need a "ticker symbol," which is an abbreviation used to uniquely identify publicly traded shares of a particular security on a particular market. To obtain a ticker symbol, a special application, called a Form 211, must be submitted to the Financial Industry Regulatory Authority (FINRA), the organization that is responsible for assigning over-the-counter ticker symbols. The

Letter to Beneficiaries
September 13, 2019
Page 2

Trust cannot apply for a ticker symbol on the OTCBB; only a securities broker-dealer that is a FINRA member can submit the Form 211. In order to submit a Form 211 for the Class A Interests, the securities dealer must be ready, willing and able to "make a market" in these securities—that is, to buy or sell the Class A Interests at the quoted bid and ask price. We are currently working to identify at least one securities broker-dealer who is willing to act as a market maker for the Class A Interests and to submit the required Form 211 application to FINRA. There can be no assurance that the Trust will be successful in doing so on or before the time that the Registration Statement is effective, or at all.

Once we identify a sponsoring broker-dealer, it will be necessary for us to provide the broker-dealer with the information necessary for the broker-dealer to (a) determine that it is interested in acting as a market maker and (b) complete and submit the Form 211. I am optimistic that the Trust can provide the necessary information, but there can be no assurances that this will be the case. In any event, over-the-counter trading will not commence until sometime after the Registration Statement has become effective. For the most part, this delay is because FINRA is not expected to assign a ticker symbol for the Class A Interests until it can confirm that the Registration Statement has become effective and that the Class A Interests are compliant with FINRA standards. It is possible that there may also be delays as a result of the need for the Class A Interests to be determined by Depository Trust Company to be eligible for electronic book-entry transfers through the Direct Registration System (DRS).

What does this mean? It means that the Class A Interests are expected to be transferable promptly after the Registration Statement becomes effective, which is expected later this calendar year. But because the Class A Interests will not be traded on the OTCBB after the Class A Interests have become transferable, there will be some period (which I hope to be a short period), during which holders will be able to sell their Class A Interests but will not enjoy the benefits of an organized trading market in which to carry out their sales. During that period, for example, you will still be able, if you wish, to sell your Class A Interests, but you would need find a direct buyer instead of merely instructing your securities broker to sell in an "open market" transaction. You would then need to negotiate with that buyer regarding the price and other terms of the sale, without being able to refer to price quotations for the Class A Interests on any organized trading market. I urge you to exercise caution in making any buy or sell decisions during any period between the *commencement of transferability* and the *commencement of OTCBB trading*.

Please note that the Trust is not seeking registration of the Class B Liquidation Trust Interests, which are expected to remain non-transferable indefinitely.

The effectiveness of the Registration Statement will cause the Trust to become subject to the reporting requirements of the Exchange Act and to be obligated to file annual reports on Form 10-K, quarterly reports on Form 10-Q and current reports on Form 8-K. These reports, which contain a great deal of valuable information about the Class A Interests, will be publicly available for viewing and copying at https://sec.gov/edgar.shtml. In addition, through the Trust's website at https://woodbridgeliquidationtrust.com, I plan to make these reports available, free of charge, as

Letter to Beneficiaries
September 13, 2019
Page 2

soon as reasonably practicable after we electronically file them with the SEC. I urge you to carefully review all such reports for a complete understanding of the Class A Interests.

*Updated estimates regarding beneficiary recoveries*

In conjunction with preparing the financial information required in the Registration Statement, the Trust and the Wind-Down Entity have approved a revised business plan for the liquidation of the real properties formerly owned by the Woodbridge debtors and now owned by the Trust's subsidiaries. The revised business plan takes into account updated financial circumstances and the current state of the Los Angeles real estate market, which has substantially changed during the past 12-18 months. As many of you know, the vast majority of the projected recovery is from real properties located in Los Angeles; accordingly, estimated recoveries are heavily dependent on the state of the Los Angeles real estate market.

Pursuant to the revised business plan, the Trust estimates the following approximate recoveries by Noteholders, Unitholders and General Unsecured Creditors:

| Class 3 | Note Claims | 40%-63% of Allowed Claims |
| Class 4 | General Unsecured Claims | 40%-60% of Allowed Claims |
| Class 5 | Unit Claims | 29%-46% of Allowed Claims |

The foregoing numbers are estimates, and are not guarantees of recovery, and it is projected to take approximately two years to realize these results. The actual results and the estimated timeline may vary from these estimates. Variations may be based on numerous factors, including, but not limited to, continued changes in the Los Angeles real estate market. The foregoing estimates do not include any significant recoveries from litigation brought or to be brought by or on behalf of the Trust, as such recoveries are highly unpredictable at this time.

Please continue to check the website at www.woodbridgeliquidationtrust.com. I will endeavor to continue providing periodic updates.

Sincerely,

Michael Goldberg
Trustee of the Woodbridge Liquidation Trust